IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

Michael Lee Garrity, )
 )
     Plaintiff, )
 )
  -vs- ) Civil Action No. 12-255 Erie
 )
CAROLYN W. COLVIN,[1] )
COMMISSIONER OF SOCIAL SECURITY, )
 )
     Defendant. )

AMBROSE, Senior District Judge.

## OPINION
### and
## ORDER OF COURT

### SYNOPSIS

Plaintiff has filed a Motion for Summary Judgment relating to the denial of his claim for Supplemental Security Income and Disability Insurance Benefits (Docket No 8). Plaintiff contends that the denial is not supported by substantial evidence of record and is contrary to law. The Defendant Commissioner of Social Security has filed a Cross Motion for Summary Judgment (Docket No. 10), urging that the denial be affirmed. After careful consideration of the parties' submissions, and based upon the reasons set forth in my Opinion, the Plaintiff's Motion for Summary Judgment (Docket No. 8) is denied and the Defendant's Motion for Summary Judgment (Docket No. 10) is granted.

### BACKGROUND

Garrity protectively filed for a period of disability and disability insurance benefits on March 21, 2011, and for supplemental security income on March 9, 2011. He alleges a disability onset date of September 1, 2009 in both applications. The Administrative Law Judge

---

[1] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.

held a hearing on March 30, 2012 at which a vocational expert, Karen Krull, testified. Following the hearing the ALJ issued a decision finding that Garrity was not disabled at the fourth step of the five step sequential analysis. Specifically, the ALJ determined that Garrity had the residual functional capacity to perform his past relevant work. The ALJ found, in the alternative, at the fifth step of the analysis, that Garrity was not disabled because he was capable of performing other jobs existing in the national economy. The Appeals Council denied Garrity's request for review and Garrity filed this appeal.

With respect to his claim for disability insurance benefits, Garrity's earnings record shows that he has sufficient coverage to remain insured through December 31, 2014. Consequently, he must prove that he was disabled on or before that date in order to be entitled to a period of disability and disability insurance benefits. See 42 U.S.C. § 423(a)(1)(A) & (D); 20 C.F.R. § 404.130. There is no corollary requirement for the payment of SSI benefits, which are paid prospectively only.

At the time of the amended disability onset date, Garrity was 49 years old, having been born on September 21, 1959. (R. 20). As such, he is considered to be a "younger individual" but he changed age categories during the course of his application process to "closely approaching advanced age." (R. 20). He graduated from high school and attended three different vocational training schools – welding, auto mechanic and electrician. (R. 32). He has past relevant work experience as a store manager of a Dollar Tree store. (R. 33). In that capacity Garrity did many tasks, including hiring, firing, training, running the register, unlading trucks, stocking shelves, and remodeling the store. (R. 33). He eventually asked for a transfer because of back pain and worked solely as a cashier. (R. .34).

He currently takes Fentanyl and Valium which he reports as causing problems with his memory. (R. 35). He treats with Dr. Shaughnessy. (R. 36). He sees him approximately once every two months because of pain. An MRI of the lumbar spine taken on May 6th of 2004

2

indicated that there was degenerative disk and facet disease in the lumbar spine resulting in varying degree of canal and foraminal narrowing with changes the most pronounced at L4-5. (R. 241). At L4-5 there was a diffuse broad-based disk bulge with a central disk protrusion and bilateral facet hypertrophy resulting in a moderate to severe central canal stenosis and a mild-to-moderate bilateral foraminal stenosis. (R. 241). An MRI of the cervical spine taken on the same day revealed disk herniations at the C5-6 and C6-7, but normal alignment and no fracture. (R. 242-43).

There is no indication that Garrity sought treatment for anything related to the results of those MRIs for several years. In 2009 Garrity consulted Dr. James Liszewski. Treatment records dated August 27, 2009 indicate that Garrity presented for a general physical. (R. 246). The records noted Garrity's history of lumbar degenerative disk disease "which has been diagnosed and treated by Dr. Shaughnessy… ." (R. 246). The records later reference that Garrity will continue to follow up with Dr. Shaughnessy with respect to the "chronic low back pain due to degenerative reasons." (R. 246).

On March 10, 2011, Dr. Shaughnessy saw Garrity for back and leg pain. He noted that Garrity had a medical history of "moderate degenerative disk disease lumbar." (R. 267). He recommended injections when needed and exercise. (R. 267). In terms of work capacity, Dr. Shaughnessy circled "none" and under the "comments" section, he noted "chronic – not likely to improve." (R. 267).

Dr. Shaughnessy completed a Medical Source Statement on April 7, 2011. (R. 253-260). Dr. Shaughnessy indicated that Garrity suffers from moderate lumbar degenerative disk disease with an onset date of 2005, and that he is seen every 3-4 months. (R. 254). The disease is "progressive" with increasing mechanical lower back pain. (R. 254). Both standing too long and bending incite the pain and lying down relieves the pain. (R. 254). Garrity's straight leg tests were negative; he had normal sensation and normal reflexes; and on a scale of

3

0-5 for "motor power," scored a "4" in terms of movement against gravity with some resistance. (R. 254-55). Garrity displayed no evidence of ankylosis of the spine and no evidence of arachnoiditis. (R. 255). His flexion / extension range of motion was 60 degrees; his right lateral flexion was 15 degrees and his left lateral flexion was 15 degrees. (R. 255). Garrity did not use an assistive device for ambulation and had not been prescribed an orthotic. (R. 256). Surgery had not been performed nor had Garrity alleged inflammatory arthritis. (R. 256). Dr. Shaughnessy noted that Garrity experiences mild fatigue as a side effect from the medication. (R. 259). He has prescribed exercise as a treatment but seen no improvement. (R. 259). He indicated that Garrity is "unlikely to improve significantly." He indicated that Garrity could lift between 2-3 pounds frequently and 10 pounds occasionally. Similarly, he could carry between 2-3 pounds frequently and 10 pounds occasionally. (R. 261). He opined that Garrity can stand and walk between 1-2 hours in an 8 hour day and sit between 2 and 4 hours. (R. 261). He is limited in terms of his upper extremities to light and occasional pushing and pulling and limited in terms of his lower extremities to no repetitive foot controls. (R. 261). Posturally, Garrity should never stoop, balance or climb and can only occasionally bend, kneel and crouch. (R. 262). Garrity has no limitations with respect to handling, fingering, feeling, seeing, hearing, speaking, tasting / smelling, or continence, but can only occasionally read. (R. 262). He is to avoid vibrating sitting or standing surfaces, as well as heights and power equitpment. (R. 262).

Dr. Shaughnessy has not yet recommended surgery. (R. 36). Garrity reports that the pain starts at the base of his skull and goes all the way down to his ankles. It pervades his muscles and joints. (R. 37). He has not sought a second opinion concerning a need for surgery because of his limited financial resources. (R. 37). Garrity also suffers from knee pain because of a tear in his meniscus. He had surgery to repair it prior to the hearing. (R. 38).

      An MRI of the cervical spine dated June 10, 2011 showed some change. Specifically, Dr. Shaughnessy noted that at C5-C6, "[m]oderate central disc protrusion is demonstrated

which is slightly greater than previous…." (R. 268). However, he noted that "[c]ord signal is unremarkable." (R. 268).

Treatment noted from July 18, 2011 indicates that Garrity complained of increasing pain; that he was experiencing more numbness in his upper extremities. (R. 272). The notes describe Garrity's activity level as "very high." Garrity mows his own property, built a deck, gardens and takes care of his five year old granddaughter. (R. 271). In terms of a plan, Dr. Shaughnessy noted "[w]e did discuss surgery. He has not failed epidural injections. It will likely help. At this point, I am not sure he is a good candidate, but if he has progressive neck symptoms and arm symptoms, then we may have to go that route." (R. 272).

Garrity visited Dr. Shaughnessy on October 20, 2011. He complained of worsening pain and of spasm and pain and pressure in the lower part of his back. (R. 271). The notes reflect that Garrity reported having been walking his dog 10 miles a day. (R. 271).

Dr. Shaughnessy's treatment notes of December 19, 2011 indicate that Garrity complained of pain from head to toe. (R. 270). Garrity reported an injury to his left leg which occurred on the last day of hunting season. (R. 270). Upon examination, Dr. Shaughnessy noted that Garrity's lumbar motion continued to be mildly limited but that he was able to flex forward and had difficulty extending. His motions were half to three-quarters range. There was tenderness to the lumbosacral junction and sacroiliacs. Garrity's hip rotation was generally good and his straight leg raise was negative for radiating pain. (R. 270). Dr. Shaughnessy noted moderate lumbar degenerative disc disease and moderate cervical disc disease, stable. (R. 270).

Garrity had an MRI of the lumbar spine and cervical spine performed on May 29, 2012. (R. 275).2

---

2 The Government urges that this Court cannot consider the May 29, 2012 evidence in performing its substantial evidence review because that evidence was not before the ALJ. See Docket No. [11], p. 14-15. Notably, Garrity has

Garrity testified at the hearing that he lives in a small, two bedroom mobile home owned by his parents. The home is located on a 20 acre piece of property. He is divorced and lives with his dog Molly. (R. 30-31). He has a driver's license and drives between 30-40 miles per week. (R. 31). He also goes for daily walks, although the walks are no more than 500 yards in length. (R. 38). Garrity cooks for himself, but describes his meal preparation as "very quick" – something like a pizza. (R. 41-42). He takes care of the property himself. In the past he has used a zero point mower to mow the lawn. (R. 42). He mows for 30 to 40 minutes at a time and then takes a break. (R. 42). He estimates that it takes him approximately 4 days to get the whole yard mowed. (R. 42). He has also made some repairs to a deck and done other household repairs, such as put alight socket in or put an outlet in. (R. 42). He also vacuums the house once a day and does his laundry at a laundry mat once a week. (R. 43). The summer before the hearing he took care of his five year old granddaughter. (R. 42).

During the hearing, the ALJ asked the vocational expert, Karen Crawl, to describe Garrity's past work experience in terms of skill and exertional level. She explained that Garrity's testimony indicated that he had three jobs as a manager and that these jobs would be light and skilled but appeared to be very heavy as performed.(R. 49). She described his work as a cashier as "light, low end of semiskilled" and his job as shipping and receiving supervisor as light and skilled." (R. 49). Upon further questioning, she explained that the manager job would have skills that would be transferrable to a sedentary occupation, such as a telephone solicitor. (R. 49). Crawl stated that 354,000 such jobs exist in the national economy. (R. 49). The ALJ also posed the following question:

> Now, if we had a person of the claimant's age, education and the past work you described, and this person – this is the first hypothetical – they would be limited to light work as is defined in the regulations. In addition, they would be able to occasionally stoop, crouch, crawl, balance. Based on that hypothetical, could

---

not argued, much less demonstrated, how that evidence satisfies the requirements of 42 U.S.C. § 405(g). As such, I agree with the Government that the evidence should not be considered.

such a person do any of the past jobs you described?"

(R. 50). The vocational expert answered that the individual could do the cashier job. (R. 50). She further explained that "[t]he store manager and shipping receiving clerk they would be able to do as per the DOT, but not as they performed the jobs... ." (R. 50). Crawl added that the individual could also perform the duties of a fast food worker and of an assembler. (R. 50). Those are unskilled positions. If the individual were further limited in terms of postural limitations – in that he or she would need to sit or stand about every 30 minutes – the available jobs would be diminished. The vocational expert explained that only 300,000 cashier jobs would be available nationally. (R. 51). There would be perhaps only a 10% drop in the available telephone solicitation jobs because, with headphones on, and individual can either sit or stand. (R. 51). If, however, the individual is posturally limited in the sense that he or she would have to be in a reclining position a third of the day, the vocational expert stated that there would be no jobs available in the national economy. (R. 52).

## **LEGAL ANALYSIS**

### A. STANDARD OF REVIEW

The standard of review in social security cases is whether substantial evidence exists in the record to support the Commissioner's decision. *Allen v. Bowen,* 881 F.2d 37, 39 (3d Cir. 1989). Substantial evidence has been defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate." *Ventura v. Shalala,* 55 F.3d 900, 901 (3d Cir. 1995), *quoting Richardson v. Perales,* 402 U.S. 389, 401 (1971). Determining whether substantial evidence exists is "not merely a quantitative exercise." *Gilliland v. Heckler*, 786 F.2d 178, 183 (3d Cir. 1986) (*citing Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). "A single piece of evidence will not satisfy the substantiality test if the secretary ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence

substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g., that offered by treating physicians)." *Id.* The Commissioner's findings of fact, if supported by substantial evidence, are conclusive. 42 U.S.C. §405(g); *Dobrowolsky v. Califano,* 606 F.2d 403, 406 (3d Cir. 1979). A district court cannot conduct a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Palmer v. Apfel,* 995 F.Supp. 549, 552 (E.D. Pa. 1998). Where the ALJ's findings of fact are supported by substantial evidence, a court is bound by those findings, even if the court would have decided the factual inquiry differently. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). To determine whether a finding is supported by substantial evidence, however, the district court must review the record as a whole. *See,* 5 U.S.C. §706.

To be eligible for social security benefits, the plaintiff must demonstrate that he/she cannot engage in substantial gainful activity because of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A); *Brewster v. Heckler,* 786 F.2d 581, 583 (3d Cir. 1986).

The Commissioner has provided the ALJ with a five-step sequential analysis to use when evaluating the disabled status of each claimant. 20 C.F.R. §404.1520(a). The ALJ must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if the claimant has a severe impairment, whether it meets or equals the criteria listed in 20 C.F.R., pt. 404, subpt. P., appx. 1; (4) if the impairment does not satisfy one of the impairment listings, whether the claimant's impairments prevent him from performing his past relevant work; and (5) if the claimant is incapable of performing his past relevant work, whether he can perform any other work which exists in the national economy, in light of his age, education, work experience and residual functional capacity. 20 C.F.R. §404.1520. The claimant carries the initial burden of demonstrating by

medical evidence that he is unable to return to his previous employment (steps 1-4). *Dobrowolsky*, 606 F.2d at 406. Once the claimant meets this burden, the burden of proof shifts to the Commissioner to show that the claimant can engage in alternative substantial gainful activity (step 5). *Id.*

A district court, after reviewing the entire record may affirm, modify, or reverse the decision with or without remand to the Commissioner for rehearing. *Podedworny v. Harris,* 745 F.2d 210, 221 (3d Cir. 1984).

### B. WHETHER THE ALJ'S FINDING REGARDING RESIDUAL FUNCTIONAL CAPACITY WAS SUPPORTED BY SUBSTANTIAL EVIDENCE

Garrity urges that the ALJ's residual functional capacity finding was not supported by substantial evidence. The ALJ found that Garrity had the residual functional capacity to perform light work, as defined in 20 C.F.R. § 404.1567(b) and 416.967(b), except with only occasional stooping, crouching, crawling and balancing. (R. 17). As noted above, Dr. Shaughnessy opined that Garrity could walk one to two hours total in an eight hour work day and sit for two to four hours total in an eight hour work day. (R. 261). SSR No. 96-8p, entitled "Assessing Residual Functional Capacity in Initial Claims," provides that "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." 1996 SSR LEXIS 5. Garrity reasons that the ALJ's finding cannot be supported by substantial evidence of record because Dr. Shaughnessy found that Garrity could work a total of 3 hours a day, at worst, and 6 hours a day, at best. He urges that Dr. Shaughnessy's opinion as a treating physician was entitled to controlling weight, particularly in light of the absence of any medical opinion to the contrary from a state agency.

"A cardinal principle guiding disability eligibility determinations is that the ALJ

accord treating physicians' reports great weight, especially 'when their opinions reflect expert judgment based on a continuing observation of the patient's condition over a prolonged period of time.'" *Grogan v. Comm'r of Soc. Sec.*, 459 Fed. Appx. 132, 137 (3d Cir. 2012), *citing*, *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000) (*quoting, Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999). "However, '[t]he law is clear … that the opinion of a treating physician does not bind the ALJ on the issue of functional capacity.'" *Grogan*, 459 Fed. Appx., at 137, *citing Brown v. Astrue*, 649 F.3d 193, 197 n. 2 (3d Cir. 2011). "A treating physician's opinion on the nature and severity of a claimant's impairment is only given controlling weight when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the [claimant's] case record.'" *Grogan*, 459 Fed. Appx. at 137, *citing Fargnoli v. Halter*, 247 F.3d 34, 43 (3d Cir. 2001) (alteration in original) (*quoting* 20 C.F.R. § 404.1527(d)(2)).

*Calvo v. Astrue*, Civil No. 11-632, 2012 U.S. Dist. LEXIS 162818, #0-31 (Nealon, J.) (M.D. Pa. Nov. 14, 2012).

Here, the ALJ found that Dr. Shaughnessy's opinion regarding Garrity's limitations was not well-supported either by his own records. (R. 18-19). The question before me is whether the ALJ's decision in this regard is supported by substantial evidence of record. I find that it is. For instance, as noted above, the medical records note that Garrity did not attend physical therapy nor did he use an ambulatory device. Garrity contends that the lack of therapy stems from the distance for travel and the cost of gas. Yet the ALJ was entitled to make a credibility determination that this contention is inconsistent with allegations of unremitting pain. Further, the ALJ correctly noted that Garrity has had only conservative medical treatment to date. The medical records reflect only treatment through medication rather than any type of invasive treatment or surgery. Further, the treatment is somewhat infrequent. Garrity sees Dr. Shaughnessy only once every several months. Additionally, Dr. Shaughnessy himself noted that Garrity's activity level was "very high." He documented that Garrity lived alone and took care of his property; that he built a deck; that he took care of his 5 year old granddaughter; that he rode a tractor and gardened; that he mowed his own yard; that he walked his dog ten miles

10

a day; and that he hunted.  All of these activities were going on while Garrity continued to complain of worsening pain.  At the same time, Dr. Shaughnessy's medical records indicate negative straight leg-raising tests.  Dr. Liszewski had also found that Garrity had full range of motion in all joints. (R. 18). Furthermore, Dr. Shaughnessy opined that Garrity could lift and carry up to ten pounds occasionally and two to three pounds frequently. Yet less than one week before Dr. Shaughnessy completed the functional capacity assessment Garrity himself stated that he could lift up to 50 pounds. (R. 207).  During the hearing, Garrity acknowledged that he could lift up to 20 pounds. (R. 43).

In sum, I find that the ALJ's decision regarding Garrity's residual functional capacity is supported by substantial evidence.  Garrity's argument to the contrary is based largely upon the weight the ALJ accorded Dr. Shaughnessy's Medical Source Statement of Claimant's Ability to Perform Work-Related Physical Activities.  As stated above, the conclusions Dr. Shaughnessy sets forth in this Statement are inconsistent with his own treatment notes and medical findings, and with Garrity's own testimony at the hearing and activities of daily living. Consequently, the ALJ's conclusion that Garrity has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) and § 416.967(b), except with only occasional stooping, crouching, crawling or balancing, is supported by substantial evidence of record.

### C. WHETHER THE ALJ'S CREDIBILITY DETERMINATION IS SUPPORTED BY SUBSTANTIAL EVIDENCE OF RECORD

Garrity contends that the ALJ's assessment of credibility merits remand. Specifically, Garrity urges that an ALJ must give great weight to a claimant's testimony when such testimony is supported by competent medical evidence as was his here.  He further argues that the ALJ ignored his long and consistent work history and that the ALJ mischaracterized his

daily activities.

An ALJ is charged with the responsibility of determining credibility. *Smith v. Califano*, 637 F.2d 968, 972 (3d Cir. 1981); *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975). The ALJ must consider "the entire case record" in determining the credibility of an individual's statement. SSR 96-7p. The ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reason for that weight." Id. I must defer to the ALJ's credibility determinations, unless they are not supported by substantial evidence. *Smith*, 637 F.2d at 972; *Baerga*, 500 F.2d at 312.

As stated above, here Garrity faults the ALJ with respect to his findings of Garrity's credibility regarding pain. Garrity had testified that he experienced pain from the base of his neck down to his feet with tingling and numbness in his toes. (R. 18). Garrity reported being unable to stand for 10 or 15 minutes as well as an inability to sit at a computer desk for very long. (R. 18). The ALJ stated that he found "the claimant's medically determinable impairment could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 18). In reaching this conclusion, the ALJ engaged in a thorough review of the medical records, noting, for instance, Dr. Liszewski's observation that Garrity had full range of motion of all joints; that Garrity did not use an ambulatory device; that there was no evidence of ankylosis or arachnoiditis; that straight-leg raising tests were negative and that Dr. Shaughnessy's treatment records documented a high activity level despite pain complaints. The ALJ also referenced Garrity's "infrequent and conservative treatment for pain." (R. 18). The ALJ also considered Garrity's testimony during the hearing. Garrity testified that he lived

alone; that he took care of a large property; that he drove 30-40 miles per week; that he cooked and cleaned for himself and that he occasionally hunted and fished. He also noted the daily use of a computer and the past repairing of a deck. (R. 19).3 In support of this finding, the ALJ exhaustively considered the objective medical evidence of record, including numerous test results and other medical records regarding the severity of Garrity's condition, as well as Garrity's own activities of daily living.

Because Garrity's statements concerning his pain and its impact on his ability to work were inconsistent with the evidence cited by the ALJ, the court does not find any error on this issue.

### D.  WHETHER THE ALJ ERRED IN FINDING GARRITY CAPABLE OF PAST RELEVANT WORK OR OF BEING ABLE TO PERFORM OTHER JOBS

Finally, Garrity argues that the ALJ erred at the fourth and fifth steps of the five step sequential analysis – specifically, whether he could perform his past relevant work or any other work in the national economy. I need not address Garrity's first argument because, even if successful (a finding I am decidedly not making), his second argument would fail. The ALJ found that, "considering the claimant's age, education, work experience, and residual functional capacity, there are other jobs that exist in significant numbers in the national economy that the claimant can also perform." (R. 20). Garrity contends that the ALJ's decision must be reversed because the ALJ mechanically applied the Grids in terms of Garrity's age and because of an improperly worded hypothetical question. I disagree.

Contrary to Garrity's suggestion, the record indicates that the ALJ was well aware of Garrity's age and gave it appropriate weight. The ALJ wrote "[t]he claimant was born on

---

3 Garrity contends that the ALJ "misrepresented" his testimony because the ALJ found, for instance, that Garrity cooked and did his own laundry. (R. 19). During the hearing, Garrity did in fact state that he cooked his own meals, though he qualified that the meals were quickly put together, such as cooking a pizza. (R. 41). Garrity also testified that he did his laundry at a laundry mat once a month. (R. 43). I fail to find any mischaracterization.

September 21, 1959 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963)." (R. 20). Thus, the ALJ was aware of Garrity's change in age and did not mechanically apply the grids. Indeed, he cites to both. (R. 20).

I turn then to Garrity's contention that the ALJ erred in formulating the hypothetical posed to the vocational expert. Garrity urges that "[h]ere, the hypothetical question was based upon an incomplete and inaccurate RFC; it therefore did not reflect Garrity's impairments and limitations." See Docket No. [9], p. 16. I have already determined, as set forth above, that the ALJ's assessment of Garrity's residual functional capacity is supported by substantial evidence of record. Consequently, Garrity's contention that the hypothetical question posed to the vocational expert was erroneous because it was based upon "an incomplete and inaccurate" residual functional capacity is unconvincing.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MICHAEL LEE GARRITY,              )
       Plaintiff,              )
  -vs-                              )    Civil Action No. 12-255 ERIE
CAROLYN W. COLVIN,[4]              )
COMMISSIONER OF SOCIAL SECURITY,  )
       Defendant.              )

AMBROSE, Senior District Judge.

## ORDER OF COURT

THEREFORE, this _____day of January, 2014, it is ordered that the decision of the ALJ is affirmed and Plaintiff's Motion for Summary Judgment (Docket No. 8) is denied and Defendant's Motion for Summary Judgment (Docket No. 10) is granted.

BY THE COURT:

   s/ Donetta W. Ambrose
   Donetta W. Ambrose
   United States Senior District Judge

---

[4] Carolyn W. Colvin became acting Commissioner of Social Security on February 14, 2013, replacing Michael J. Astrue.